AGUSTÍN DELANNOY, Plaintiff and Appellant, *v.* HEIRS OF MANUEL CIVIDANES Y ALONSO, Defendants and Appellees.

No. 7279.   Argued May 26, 1937.—Decided April 22, 1938.

*Ramón G. Goyco* and *Angel Fiol Negrón* for appellant.   *C. Domínguez Rubio* for appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The district court dismissed a filiation suit for want of evidence sufficient to establish plaintiff's status as a natural

child. This is assigned as error. Witnesses for plaintiff testified substantially as follows:

María Delannoy, plaintiff's mother:

Witness was the daughter of a laundress employed by Cividanes' mistress; Alejandro, a brother of witness, was employed by Cividanes in a liquor shop which he kept in the house where he lived; when the mistress left Puerto Rico, Cividanes sent for María to take charge of the house, which she did; for about a month she occupied a room with a servant who had been in the house for some years; Cividanes then took her into his bed-room; some three years later, a child (now plaintiff herein) was born; the day before this event, Cividanes, at the request of witness, sent her into the country to the house of her mother; a few days later Cividanes visited the mother and child, paid the midwife, gave the mother two dollars and told one Vázquez, the owner of a nearby store, to let her have whatever she might need; thereafter he sent her money, four or five dollars at a time, by Alejandro; a month later, Cividanes married and took another house, but María returned and occupied a room in the liquor establishment or in the house where the liquor business was carried on; there she remained for another year or more when she quarreled with one Román Sobrino, a partner or buisness associate of Cividanes, and returned to the home of her mother; later, having found employment, she left the child with its grand-mother; after another year or more, Cividanes was passing through a place called Coquí, near Aguirre; he sent for witness who came to him with the child and had a talk with him; on this occasion he gave her five dollars, and told her to come or to send the child once a week on Mondays or Tuesdays to the same place; on a number of subsequent occasions, extending over a period of some years, he gave witness or the child three or four dollars at a time; Francisco Cividanes, a nephew of the putative father, introduced witness and her son, now plaintiff herein, to an attorney, who filed the filiation suit.

Maximina Colón:

Witness was employed as a servant by the mistress of Cividanes and when the mistress left Maximina remained in the house; María Delannoy, when she came, occupied a room with witness for about a month and thereafter the Cividanes bedroom; Cividanes sent María to the country with her brother Alejandro just before the birth of the child; forty-one days after giving birth to the child María returned with it to the house where she remained some two years thereafter; Cividanes supplied its food, showed his affection for it and said that it was his child; the child was born in May; Cividanes married in June; witness went as a servant to the new Cividanes home; Cividanes gave witness money for the child and would say "Take this to my son"; often the child's uncle, Alejandro, would go; he would say "Listen, Maximina, tell Don Manuel to send something to the baby"; then witness would deliver the message; he would give witness a couple of dollars and witness would send it by Alejandro; this was repeated a number of times, not a great many, on some four or five or six different occasions; Cividanes, after his marriage, did not resume his sexual intercourse with María Delannoy; witness went once with Alejandro when he purchased supplies for María from Vázquez, and told María that Don Manuel had sent them; after María returned with the child to Guayama, Cividanes sent them supplies from time to time; witness was a servant in the house of Cividanes for three years before his marriage and for two years thereafter; María did the cooking, washing and ironing for Cividanes before his marriage.

Luis Vázquez:

Witness owned a store in 1896 and bought liquor from Cividanes during a period of eight or ten years; two or three days after the birth of the child, Cividanes left his phaeton near the store and visited the house of María Delannoy; he again visited the house some fifteen days later; Cividanes on the occasion of his first visit told witness to let María

have whatever she wanted and witness furnished her supplies
for some thirty-five or thirty-seven days; Cividanes paid the
bill; the mother of witness acted as midwife and Cividanes
sent her a five dollar bill enclosed in a note of thanks; María
was in the house of her mother forty-one days at that time
and again some two or three years later.

Pedro Banks, coachman:

Witness corroborated the testimony of María Delannoy as
to interview with Cividanes in Coquí; saw the child Agustín
at times at the *hacienda*, when he would greet Cividanes and
ask his blessing, and Cividanes would respond with a benediction and give him money; sometimes the child would accompany Cividanes in his coach to the public highway and then
walk to Coquí while Cividanes continued his journey to Guayama; witness saw Agustín once in conversation with Cividanes on the balcony of the Cividanes home in Guayama
sometime after the death of Mrs. Cividanes.

Ramón Paína:

Witness corroborated María and the coachman as to the
interview in Coquí; on two or three subsequent occasions
Cividanes sent witness to find the child in Coquí, caressed
the boy on his arrival and gave him money.

Alejandro Delannoy, brother of María:

Witness, when a child, was turned over by his mother to
Cividanes with whom he remained nine years; when María
came to live in the house, Cividanes sent witness for her;
at the time of her confinement, Cividanes sent her in his
phaeton to the house of her mother; Leonor Vázquez, mother
of Luis Vázquez, was the midwife; Cividanes told witness to
request her assistance; Cividanes went with witness in the
phaeton the day after the child was born and saw it; he
made another visit fifteen days later and again saw the child;
he sent witness in the phaeton to bring María back to the
house where she remained for two years; Cividanes provided
for the mother and child during that period; thereafter
during the four years that María lived in the house of her

mother witness obtained his sister's allowance from Don Manuel either directly or through Maximina who would go and ask him for it and he would give it to her and she would give it to witness; this continued throughout the six years that the child was in the house of its grandmother, to the time of her death; neither witness nor his sister were ever paid any wages; Cividanes sent five dollars with Vázquez to his mother.

Agustín Delannoy:

Witness corroborated the testimony of María Delannoy, Ramón Paína and Pedro Banks as to interview with Cividanes in Coquí but did not remember details; after that incident witness would go to Cividanes, ask for his blessing and Cividanes would respond; witness saw Cividanes a number of times in Coquí during the next few years and also at the *hacienda* Sabater; witness went to him for money because the mother of witness was living with another man by whom witness was not supposed to be supported, and Cividanes was his father; whenever witness went, Cividanes gave him something; witness went to him every other week or so until he was fifteen or sixteen years old when he began to learn a trade and for a time did not go; Cividanes treated witness as a father would treat a son; witness saw Cividanes last in 1924; when witness was about to leave for New York as fireman on a steamer, he asked Cividanes for a couple of dollars which he would need on landing in New York where he expected to remain, and Cividanes gave him $20.00; before that, in 1917 or 1918, during the war, witness enlisted in Aguirre, and his mother told him he was not old enough but she was not sure of this, nor was witness; he told Cividanes that he had enlisted, and Cividanes said he was too young; Cividanes did not want him to enlist; witness was a blacksmith and went to Cividanes for work; Cividanes said he had a law suit and could not employ him but would give him work in two months; witness returned to Aguirre where he remained two weeks, then came to Guayama and obtained

work with Eduardo Jaime in the ice plant; witness returned to Puerto Rico in December 1931; on his arrival, Francisco Cividanes, a nephew of the putative father, sent for him and introduced him to the attorney who later filed the filiation suit, and the attorney went with witness and Francisco Cividanes to interview the mother of witness in Aguirre; it was Francisco Cividanes who took the attorney to see the mother of witness and played a part in the commencement of the action; he went with witness to the civil registry to see if the name of witness appeared therein; Francisco Cividanes treated witness as a relative and presented witness as his cousin to a number of people in his home; Rafael Cividanes also treated witness as a relative until the heirs received their rights from attorney Anglade; since then witness was not a relative, but a negro; Francisco and Rafael treated witness as a relative for several months after his arrival but not thereafter; witness went with Francisco on one occasion to the office of the attorney to ascertain why the suit had not been filed, and Francisco called the attorney's attention to a mole or birth mark as the distinctive mark of a Cividanes.

It may be conceded that if this were all, or if the district judge had rendered judgment for plaintiff, the evidence for plaintiff would have sufficed to sustain such a judgment. It may be conceded that the case as a whole is a border case. In all of the cases upon which appellant relies, however, the evidence was most stronger than in the instant case. See *Cruz v. Santiago*, 24 P.R.R. 100; *Montalvo v. Montalvo et al.*, 25 P.R.R. 800; *Cruz v. Quiñones*, 31 P.R.R. 323; *Vega v. Heirs of Vega*, 32 P.R.R. 548; *Guadalupe v. González*, 34 P.R.R. 643; *Colón v. Succn. of Tristani*, 44 P.R.R. 163.

In the first four of these cases judgments for plaintiffs were affirmed. In the fifth and sixth, the evidence was strong enough to satisfy a majority of this court, notwithstanding the contrary view of a minority and of the district judge.

Cividanes and his mistress and his cousin, Román Sobrino, who was also a partner in the liquor business, all lived in the upper story of a house wherein the liquor business was carried on. Sometime before the marriage of Cividanes, his mistress left the island. Her departure was in fact, it seems, a condition precedent to the contemplated marriage. Sobrino and Cividanes both died before the commencement of the present action.

Maximina Santiago testified that Román Sobrino was also married and living with his wife in the house over the liquor establishment when María Delannoy returned thereto after the birth of her child. Defendants introduced documentary evidence to show that Sobrino was not married until some time in 1897. Maximina had been quite positive in her statement on cross-examination that Sobrino was already married when María Delannoy returned to the house. Aside from this discrepancy, however, she seems to have been a disinterested witness and her testimony withstood the test of cross-examination. It had at times a certain ring of truth which tended to make it somewhat stronger than the testimony of any other witness for plaintiff.

We shall not attempt to outline the testimony for defendant. It was of necessity negative in character. Nevertheless, the district judge was justified in attaching as he did, considerable importance to the fact that none of Cividanes' closest friends had any knowledge of the fact, if it were a fact, that Agustín Delannoy was his natural son or that Cividanes had treated him as a son. Guayama is not a large town. It was a smaller town in 1896. Cividanes, after the death of his wife, had natural children whom he discussed with his friends, openly acknowledged, and finally legitimated by making their mother his second wife.

Even after the lapse of nearly forty years, it was a significant fact that among those who knew Cividanes best, no responsible disinterested witness could be found to corrob-

orate the testimony of María Delannoy and her son concerning the alleged acknowlegment of the latter by Cividanes as his natural son.

We find no such manifest error in the weighing of the evidence as to justify a reversal of the district judge's finding that plaintiff had never been in the continuous enjoyment of the status of a natural child, as required by the law in force at the time of his birth and at the same time of most of the alleged acts relied on as evidence of acknowledgment.

Costs were awarded to defendant. This we think was error.

The judgment appealed from will be reversed as far as the award of costs is concerned and in all other respects affirmed.